## UNITED STATES v. ONE 1929 MODEL FORD COUPÉ.

District Court, W. D. Arkansas, Ft. Smith Division.

Feb. 6, 1930.

W. N. Ivie, U. S. Atty., of Ft. Smith, Ark.

Fadjo Cravens, of Ft. Smith, Ark., for owner.

YOUMANS, District Judge.

The United States Attorney has moved the court to order the forfeiture and sale of one 1929 model Ford coupé which has been seized by the prohibition officers under the authority of section 26 of title 2 of the National Prohibition Act (27 USCA § 40). The owner, Joe Herring, opposes the motion upon the ground that the liquor seized was in his pocket, and that he was riding in the automobile.

The following agreed statement of facts has been filed:

"It is understood and agreed by and between W. N. Ivie, United States District Attorney for the Western District of Arkansas, and Fadjo Cravens, attorney for the above named defendant, Joe Herring, that the following facts are the full, true, complete and correct facts in connection with the seizure by the officers of the United States, from the said Herring, of one 1929 Model Ford Coupé, and that the above entitled cause may be heard and disposed of, insofar as the forfeiture of the said vehicle is concerned, upon said following facts, to-wit:

"That the defendant, Joe Herring was indicted, tried and convicted at the January, 1930, term of this court, for the crime of illegally transporting intoxicating liquors, and that said prosecution was instituted and the prosecution had, under the National Prohibition Act as amended.

"That on the 25th day of November, 1929, the said Joe Herring drove to a filling station at the intersection of 18th Street and Rogers Avenue in the City of Fort Smith, Arkansas, in a 1929 Model Ford Coupé, and at said place delivered to one Roderick, a Prohibition Agent, one quart of gin. That at the time of such delivery, the automobile above described, was seized by Prohibition Officers, for forfeiture to the United States.

"That the gin transported and delivered, as aforesaid, was carried in the coat pocket of the said Joe Herring, and that the said Joe Herring was riding in said automobile.

"In Witness Whereof, the respective attorneys aforesaid, have hereunto set their hands this ——— day of February, 1930. The statement of Dorus Roderick a prohibition agent as to the details of transportation and seizure is attached hereto and made a part of this statement of facts."

The statement of Dorus Roderick, attached to the agreed statement of facts and made a part of it, reads as follows:

"Dorus Roderick, Prohibition Agent, St. Joseph, Missouri, will testify that on October 28, 1929, acting on information given me by Deputy Administrator Gurley that Joe Herring was selling and delivering whiskey in Fort Smith, Arkansas, I went with Informer Bert B. Lawson to make investigation. We got with Wallace Bourland and he went to a telephone and called some one on the telephone, and came to the car where we were sitting and said 'Drive to 11th and L Street,' and I gave Wallace Bourland $5.00 and there was a Ford car drove up to the South side of the Drug Store at this address, license No. 170–753 and Bourland returned with two pints of whiskey. Bourland stated to us at the time that it was Joe Herring and that he sold the best liquor in town. We retained this whiskey for evidence.

"On October 30, 1929, we again met Bourland at his office and he went and called Joe Herring and I told Bourland I would like to get a quart of Gin. We then drove to 11th and L and the same Ford Roadster drove up and Bourland said to me, "I do not know how much this will cost" and he said wait a minute and I will find out. Bourland returned to the car with a quart of gin wrapped up in newspaper and handed it to me and said 'It will cost $6.00.' I gave him a $5 bill and a $1 bill and he returned to

Joe Herring's car. In the afternoon of the same day I met Bourland again and told him we had drunk this Gin up and given it away and would like to get another quart. He again called Joe Herring and he met us at 11th & L and I gave Bourland $6.00 and he got this quart of Gin from Joe Herring.

"On November 16, 1929, I went to the Pierce Filling Station at 18 & Rogers and called Joe Herring at his home, phone 3405, and told him who I was, a friend of Bourland's and he said all right. He drove up and I got in the car with him and we drove South to the next block and around and he let me out at 19th & Rogers. While we were making this drive he took a quart of Gin out of his pocket and handed it to me and I paid him $6.00. On November 20, 1929, I again purchased a quart of Gin from Joe which was delivered to me at the Pierce Oil Station, in the same Ford car and I paid him $6.00 for this quart. On November 25, 1929, I called Joe Herring again at his home and he told me that he would meet me in 20 minutes at the Pierce Oil Station and he delivered me a quart of Gin in the car and I paid him $6.00 in marked money. This money was marked in the office before Agent Harmon and Deputy Administrator Gurley. I then placed Joe under arrest and Agent Harmon took the money off of him. At the time I arrested Joe he said 'I am caught and you caught me fair, and there is no hard feelings.' He also said that when he got out of this he would quit bootlegging and would leave Fort Smith."

The portion of section 26, tit. 2, of the National Prohibition Act (27 USCA § 40), applicable to the facts, reads as follows: "When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this chapter in any court having competent jurisdiction * * *. The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale * * * shall pay all liens, according to their priorities * * * and shall pay the balance of the proceeds into the Treasury of the United States as miscellaneous receipts."

The statement of Roderick shows that Joe Herring, the owner of the automobile, used the car for the delivery of whisky and gin on October 28 and 30, November 16, 20, and 25, 1929. The procedure was for the purchaser to call Herring over the telephone and ask him for whisky or gin. He would designate a place of delivery in Ft. Smith, and he then would proceed in his automobile to the place so designated, and at that place the delivery of the whisky or the gin would be made to the purchaser. On November 25, 1929, Roderick called Herring at his home and was told by Herring that he would meet Roderick at the Pierce Oil Station in 20 minutes. Herring appeared at the place named, and delivered to Roderick a quart of gin, for which Herring was paid by Roderick $6 in marked money. It clearly appears from Roderick's statement, which is a part of the statement of facts agreed upon, that Herring was using his automobile for the purpose of transporting and delivering intoxicating liquors in violation of the prohibition law. The quantity transported and delivered at any one time was small, nevertheless the automobile was a necessary and efficient agent in the transportation and sale of the intoxicating liquor. Herring carried on his business by means of the telephone and the automobile. The latter was as necessary as the former. To say that the liquor was transported on the person of Herring and was not transported in the automobile is to disregard the obvious facts. The automobile was more necessary to Herring in the transportation of the liquor that he sold than the pocket in his coat. While it is true that Herring used the automobile to transport himself, he also used it to transport the intoxicating liquor that he was selling. In my opinion such transportation comes clearly within the inhibition of section 26, above quoted. Therefore, the motion of the United States Attorney for an order of forfeiture and sale of the automobile will be sustained.